**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CRAWFORD & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 1:19-CV-00674-TCB |
| COGNIZANT TECHNOLOGY | ) | |
| SOLUTIONS U.S. CORPORATION | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

**AMENDED COMPLAINT**

Plaintiff Crawford & Company ("Crawford") brings this action for breach of contract against Cognizant Technology Solutions U.S. Corporation ("Cognizant").

**NATURE OF THE ACTION**

1.

This case arises from Defendant Cognizant's breach of its promise to implement a critical component of a major software contract for Crawford. Despite Cognizant's assurances that it would design, deliver and implement fully functional software called, "PeopleSoft Financials," Crawford repeatedly experienced serious problems with the software. Even though Crawford notified Cognizant of serious problems with coding, performance, testing and other

problems, Cognizant failed to remedy them. Instead Cognizant continued to fail to properly staff the project and to miss important deadlines, all causing significant injury to Crawford including problems so significant they threatened Crawford's own customer relationships. This lawsuit seeks recovery for Cognizant's breach of its contracts with Crawford.

**PARTIES, JURISDICTION AND VENUE**

2.

Plaintiff Crawford & Company is a Georgia corporation with a principal place of business in Peachtree Corners, Georgia, in Gwinnett County.

3.

Defendant Cognizant Technology Solutions U.S. Corporation is a company incorporated in Delaware, with a principal place of business in College Station, Texas.

4.

This is a dispute between Crawford (a citizen of Georgia) and Cognizant (a citizen of Delaware and Texas), and the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs. Accordingly, this Court possesses subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(1).

5.

Cognizant is subject to the personal jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1391. Cognizant's registered agent, CT Corporation System, may be served at 289 S Culver Street, Lawrenceville, Georgia 30046-4805 in Gwinnett County.

**FACTS**

6.

Founded in Columbus, Georgia, Crawford is now one of the largest, independent providers of insurance claims-handling services in the world. Crawford provides insurance adjusting services, catastrophe services, third party administration services and services for large and complex claims, among others.

7.

Crawford decided to engage in a major, multi-million dollar capital expenditure project to update the technology that supports several of its primary functions. As part of this process, Crawford planned to implement Enterprise Resource Planning ("ERP") software—integrated software that streamlines current business processes to achieve efficient finance operations and reduce redundancy.

8.

The creation and implementation of ERP is a major project involving complex software that costs millions of dollars and requires years to accomplish. Crawford planned for its ERP to integrate software for different business functions, including but not limited to “Risktech” software for claims management and “Cognos” software for business analytics.

9.

Another critical part of the ERP involved Project Atlas—a project to implement a software program called “PeopleSoft Financials.” Crawford decided to implement PeopleSoft Financials as a critical component to both its internal operations and its client-facing services.

10.

Project Atlas involved implementation of a new financial/accounting package to meet business and technology needs of Crawford’s finance functions related to billing, accounts receivable, loss fund accounting, fixed assets accounting, financial accounting, capital projects accounting, adjuster expenses, accounts payable, and cash management. The new financial accounting package was expected to be a modern, web-based, scalable, and modular enterprise software.

11.

In 2014, Crawford hired Cognizant to design and build customized PeopleSoft Financials. Under a preexisting Master Services Agreement between Crawford and Cognizant, the two parties entered into a series of additional agreements to govern Cognizant's responsibilities in the implementation of this software.

12.

This lawsuit concerns Cognizant's breach of these agreements for the implementation of PeopleSoft Financials.

13.

Because of the complexity of the project, Cognizant's contractual obligations are contained in a series of inter-related contracts. But the crux of Crawford's breach of contract claim is that Cognizant promised to provide fully functional PeopleSoft Financials software to Crawford. Cognizant's failure to do so is a breach of its contracts with Crawford and Cognizant is responsible for Crawford's resulting injury.

**Master Services Agreement**

14.

In 2008, Crawford entered into a Master Services Agreement with Cognizant ("MSA"), attached as Exhibit A.

15.

The MSA contemplated that the parties would "[redacted]." MSA § 1.1. The MSA also provides that [redacted]." *Id.*

16.

The MSA obligates Cognizant "[redacted]" and to furnish "[redacted]" as specified in the Work Schedules. MSA §§ 1.1 and 1.2.

17.

The MSA expressly warrants Cognizant's work and provides that "[redacted]

[redacted].” MSA §§ 8.1.1-8.1.3.

18.

Furthermore, in the event that any Deliverable or Service fails to conform to the warranty, the MSA provides that “[redacted].” MSA § 8.2. If Cognizant is unable to cure or correct the failure, Crawford is entitled to “[redacted].” *Id.*

19.

The MSA provides that Crawford “[redacted].” MSA § 3.2.

20.

The MSA allows Crawford to “[redacted].” MSA § 11.2.

21.

Section 7.4 of the MSA provides that Cognizant will cover Crawford's "[redacted]" incurred in connection to "[redacted]" or "[redacted]" that were "[redacted]." MSA § 7.4.

22.

The MSA requires Cognizant, at its own expense, [redacted]. MSA § 13. Any failure by Cognizant to adhere to the terms of MSA § 13 would constitute a breach of that contract.

**PeopleSoft SOWs and Work Schedules**

23.

Starting in 2014, Crawford and Cognizant entered into various SOWs or Work Schedules to accomplish the implementation of PeopleSoft Financials. These Work Schedules, along with the MSA, contained Cognizant's contractual obligations to Crawford.

24.

Pursuant to the MSA and the SOWs, Cognizant agreed to provide various people (or "[redacted]" in the language of the contracts), who would do the work required to meet Cognizant's obligations under the contracts. *See* Ex. B, Schedule

A-4 thereto ("[redacted]"), at 8. The contracts provided for Cognizant to staff two teams. One team would be located "[redacted]," at Crawford's Atlanta, Georgia office. The other team would be located "[redacted]," in India.

25.

In order for Crawford and Cognizant to meet their respective obligations under the contracts, Crawford's team assigned to work on Project Atlas, and Cognizant's teams were in near constant communication. The Crawford and Cognizant teams communicated in-person, and in writing electronically including email messages regarding the status of the project.

26.

Through these and other communications, Crawford and Cognizant performed many of the tasks associated with the performance of the contracts including but not limited to providing notice of problems, defects and other issues that arose in Cognizant's work, Services and Deliverables under the contracts.

27. The relevant PeopleSoft SOWs included, at least:

| **Attached As** | **Work Schedules** | **Date Initial SOW Was Signed** |
|---|---|---|
| Ex. B | PeopleSoft Financials Implementation (SOW#PSF-01-Nov2014) with addenda | 12/02/2014 |
| Ex. C | PeopleSoft Common Testing SOW 2016-2017 with addenda | 11/01/2016 |
| Ex. D | Crawford PeopleSoft Financials Support (SOW#PSF01-Jan2017) with addendum | 01/17/2017 |
| Ex. E | Work Order-Alok Galge (02/20/2017 thru 03/24/2017) with addenda | 02/14/2017 |
| Ex. F | PeopleSoft RRR SOW with addenda | 10/04/2017 |
| Ex. G | PeopleSoft Business Support SOW with addenda | 11/15/2017 |
| Ex. H | PeopleSoft Consolidated SOW with addenda | 08/08/2018 |
| Ex. I | PeopleSoft Performance Testing SOW with addendum | 02/21/2017 |
| Ex. J | PeopleSoft Functional Support SOW with addenda | 01/03/2018 |
| Ex. K | PeopleSoft Reports SOW | 06/18/2018 |

**PeopleSoft Financials Implementation Work Schedule**

28.

In 2014, Crawford and Cognizant kicked-off Project Atlas and began the process of designing and building PeopleSoft Financials for Crawford. Crawford and Cognizant entered into a SOW called the "PeopleSoft Financials Implementation (SOW#PSF01-Nov2014)," dated December 1, 2014 (the "December 1, 2014 SOW"). *See* Ex. B.

29.

The parties initially planned to go live with the PeopleSoft Financials software in 2016.

30.

A series of delays over the next several months caused by Cognizant, pushed back the "Go Live" date (the date on which the customization code was meant to move from the test environment to the production environment), prompting the parties to enter into at least seven addenda to the December 1, 2014 SOW between 2016 and 2018. The December 1, 2014 SOW along with all its addenda will be collectively called the "2014 Implementation Work Schedule." *See* Ex. B. The 2014 Implementation Work Schedule incorporated the terms of the MSA.

31.

The 2014 Implementation Work Schedule provided that Cognizant "[redacted]." Ex. B, 2014 Implementation Work Schedule at Schedule A-1, at 4. That is, Cognizant promised to design and build PeopleSoft Financials for Crawford, including designing, creating and coding the software.

32.

Under the 2014 Implementation Work Schedule, the Services Cognizant promised to provide included, among other things, [redacted]

[redacted]. Ex. B, 2014 Implementation Work Schedule at Schedule A-1, at 4.

33. Specific Deliverables under this SOW included, among other things, a [redacted]. Ex. B, 2014 Implementation Work Schedule at Schedule A-2, at 6.

34. Most importantly, however, under this SOW, Cognizant agreed to deliver [redacted]. *Id.* And Cognizant agreed to [redacted]. *Id.*

35. According to this Work Schedule, the customization code that Cognizant promised to create would conform to performance standards and the desired functionality with "[redacted]." Ex. B, 2014 Implementation Work Schedule at Schedule A-2, at 6.

**PeopleSoft Common Testing Work Schedule**

36.

Due to the numerous delays caused by Cognizant, Cognizant and Crawford were not ready to even start testing the software until late 2016. Accordingly, the parties executed the "PeopleSoft Common Testing SOW 2016 -2017," followed by at least eight addenda (collectively, the "2016 Common Testing Work Schedule"), under which Cognizant was to provide testing Services. *See* Ex. C.

37.

The Services to be performed under this SOW by Cognizant included, among other things, [redacted]. Ex. C, 2016 Common Testing Work Schedule at A-1, at 4.

38.

Under this SOW, Cognizant was also tasked with [redacted]. Ex. C, 2016 Common Testing Work Schedule at A-1, at 4. Cognizant also promised to provide [redacted]

[redacted].

*See id.* at 6 (Schedule A-3).

39.

The entire purpose of the testing process was to ensure that the software would perform the functions that it was designed to perform. Testing was a process by which problems were identified, and then Cognizant was responsible for correcting the problems.

**PeopleSoft Financials Support Work Schedule**

40.

By early 2017, Crawford and Cognizant entered into an SOW for the official rollout of the PeopleSoft Financials software and to govern Cognizant's obligations post "Go Live"—the time when Crawford users would begin using the software in the production environment. This SOW was called the "PeopleSoft Financials Support (SOW#PSF01-Jan2017)," dated January 1, 2017 (along with its addendum, the "2017 Support Work Schedule"). *See* Ex. D. The 2017 Support Work Schedule incorporated the terms of the MSA.

41.

According to the 2017 Support Work Schedule, Cognizant would implement the PeopleSoft software using [redacted]

[redacted]. Ex. D, 2017 Support Work Schedule at A-1, at 4.

42.

Due to concerns about the quality of Cognizant's customized code, Crawford determined that it would rollout the PeopleSoft software in two phases, as specified in the 2017 Support Work Schedule. *Id.*

43.

As detailed in the 2017 Support Work Schedule, in the first phase, Cognizant promised to [redacted]. The second phase included Cognizant's work to [redacted]. *Id.*

44.

The Services that Cognizant promised to provide included [redacted]." *Id.* Cognizant promised [redacted]

[redacted]. *Id.* at 6 (Schedule A-2).

45.

Among its various assurances in the 2017 Support Work Schedule, Cognizant promised to:

(1) [redacted]

(2) [redacted]

(3) [redacted]

(4) [redacted]

(5) [redacted]

(6) [redacted]

*Id.* at 7 (Schedule A-3).

46.

The 2017 Support Work Schedule called for Cognizant to have a team of employees located onsite at Crawford's offices in Atlanta, Georgia, as well as

additional employees to assist offsite and offshore. *Id.* at 9. Cognizant estimated that the total cost for the [redacted]. *Id.*

47.

Crawford and Cognizant entered into other Work Schedules as well (all of which incorporate the terms of the MSA) for the purpose of implementing PeopleSoft Financials. Those Work Schedules include, but are not limited to, those identified above at ¶ 27.

**Cognizant's Breach of the Work Schedules**

48.

Cognizant failed to perform as promised under the Work Schedules.

49.

Fundamentally, the 2014 Implementation Work Schedule required Cognizant to produce customized software that conformed to performance standards (which include well-established software coding standards) and to satisfy the desired functionality for PeopleSoft Financials.

50.

Likewise, under the 2017 Support Work Schedule, Cognizant promised to "[redacted]." Ex. D at 6 (Schedule A-2).

51.

On or about January 1, 2018, after years of delay, Cognizant provided Crawford with the customized software, but the software failed to meet performance standards and failed to satisfy the desired functionality.

52.

For example, one critical (and basic) function of the PeopleSoft software was that it should correctly calculate deductions and overpayments made to an adjuster's commissions. But after Go Live, due to poor software coding, the PeopleSoft software continued to incorrectly calculate deductions and overpayments made to adjusters' commission.

53.

Cognizant's code design problems were not limited to any one module of PeopleSoft. To the contrary, Cognizant's code design failed across the board.

54.

These problems made clear that, despite Cognizant's express assurances to the contrary, Cognizant failed to run a thorough code review before deployment of its modules.

55.

Due to Cognizant's overall deficient coding, which failed to conform to the technical design and unit tests or Crawford's specifications, several key interfaces had to be completely re-written.

56.

Crawford timely notified Cognizant about numerous, specific failures of its customization code. Cognizant was unable to adequately fix such failures.

57.

Likewise, Cognizant failed to adequately address coding issues in the testing phase, in violation of its obligations under both the 2014 Implementation Work Schedule and the 2016 Common Testing Work Schedule.

58.

For example, under these interrelated agreements, Cognizant was responsible for creating the detailed test strategy for ERP Atlas implementation, testing the customized code, and then fixing bugs that arise to ensure that when the

product goes live, the problems identified during the testing did not occur. As Cognizant agreed in the 2014 Implementation Work Schedule, during the testing phase, Cognizant was responsible for resolving [redacted].” Ex. B at 6 (Schedule A-2).

59.

Contrary to its agreement, Cognizant failed to resolve crucial issues identified in the testing phase, including its failure to do thorough regression testing.

60.

Instead, on some occasions, Cognizant’s effort to correct one coding error resulted in creating another one.

61.

At other times, after Cognizant reported that an error had been corrected, the same error would recur in the testing phase, or worse, would recur after Go Live.

62.

Moreover, at the conclusion of the testing phase, Cognizant falsely represented that it had fixed coding errors identified in the testing phase when it knew or should have known that it had failed to adequately fix such problems.

63.

This misrepresentation misled Crawford into believing that the customized software that went live on January 1, 2018 would conform to specifications.

64.

In addition to failing to deliver customized software as promised, Cognizant committed various breaches of the SOWs throughout its relationship with Crawford.

65.

For example, under the Work Schedules, including the 2014 Implementation Work Schedule and the MSA, Cognizant promised to [redacted] But in many instances, Cognizant failed to do so by failing to provide sufficient personnel to perform the work in connection with this SOW, or providing personnel who were not qualified for their positions or unable to timely complete the work assigned. In some instances, Cognizant failed to provide a single point of contact for any particular task, so that it was impossible for Crawford to know with whom it was supposed to communicate on any particular issue.

66.

Crawford lodged numerous complaints regarding Cognizant's poor staffing of the project, but Cognizant failed to sufficiently remedy this problem.

67.

Cognizant also breached the 2014 Implementation Work Schedule by failing to provide Deliverables and Services in a timely manner. Under this SOW, Cognizant was responsible for [redacted]." Ex. B at 7 (Schedule A-3). And yet, Crawford experienced serious delays in receiving work from Cognizant throughout the project.

68.

Cognizant's delays caused additional problems in the development of PeopleSoft Financials, and caused injury to Crawford. For example, while the 2014 Implementation Work Schedule initially estimated that the total cost of the work to be provided by Cognizant was around [redacted], Crawford ultimately paid Cognizant over [redacted] for this work.

69.

Cognizant further breached the 2014 Implementation Work Schedule by producing technical design documents that did not satisfy the functional designs, as required under this SOW.

70.

Just as Cognizant delayed and failed to appropriately staff the project under the 2014 Implementation Work Schedule, Crawford also delayed and failed to appropriately staff the testing phase, resulting in increased costs to Crawford. While the original testing SOW estimated that fees would be around [redacted], Crawford eventually paid over [redacted] to Cognizant for work related to testing.

71.

Cognizant also failed to live up to its promises contained in the 2017 Support Work Schedule. For example, Cognizant failed to meet service level agreements for support incidents assigned to it. Long delays and backlogs have caused damage to Crawford's business operations and collections teams. The existence of numerous problems that never seem to be fixed caused problems for Crawford's internal teams and harmed daily operations.

72.

Because the purpose of PeopleSoft Financials was to operate the entirety of Crawford's finances, the damages resulting from Cognizant's failures have been severe.

73.

Cognizant's failures to live up to its promises have resulted in Crawford paying millions to Cognizant over and above what the parties initially contemplated.

74.

Moreover, the software product that Cognizant ultimately provided to Crawford is not what Cognizant promised to deliver.

75.

Upon information and belief, due to Cognizant's many coding deficiencies, the software product Cognizant ultimately provided to Crawford may never conform to the expectations under the parties' agreements.

76.

For example, due to the fundamental problems with the Cognizant coding and customizations of PeopleSoft Financials, the cost to support and use the software is significantly greater than it would have been if Cognizant provided the Services, Deliverables, and software as promised. Upon information and belief, Crawford will continue to suffer damages as a direct result of this increased cost.

77.

Problems caused by Cognizant's deficient work caused additional delays with the project, which resulted in additional cost and delays when the PeopleSoft application would "Go Live."

78.

After "Go Live," in early 2018, when Crawford began to try to use PeopleSoft Financials, Crawford experienced serious issues with performance including over 70 individual performance problems. For example, one component of the work Cognizant was responsible for involved "batch processing," such as running certain reports. If a report was supposed to process overnight, Crawford found that the report continued to run for several days. These delays prevented the preparation of timely management reporting, and even the ability to timely produce customer invoices. As a result of Cognizant's failures, Crawford was required to hire a third party to identify the problems and recommend remedial measures.

79.

Cognizant's failure to properly implement PeopleSoft Financial caused Crawford to incorrectly calculate adjuster's commissions. Crawford's core business involves claims-management for insurance companies. Crawford relies on adjusters to assist its clients, when, for example, a natural disaster occurs. In

that circumstance, Crawford's global scale allows it to deploy people for clients who find themselves suddenly inundated with a high volume of claims. As a result of Cognizant's poor work coding, testing, and other problems, PeopleSoft Financials incorrectly calculated adjuster bonus pay and weekly commissions. This created major problems for Crawford, including the predictable damage to morale that happens when an individual's compensation is incorrect. These problems are all a result of Cognizant's failure to perform its obligations under the contracts.

80.

Despite being aware of these problems, and despite its knowledge that it was behind target dates on important deadlines, Cognizant failed to properly staff the team who is supposed to be dedicated to the work at Crawford (both onsite in Atlanta and offsite). For example, in September 2018, a key Cognizant employee staffed onsite at Crawford went on unplanned leave just before a critical deadline with no notice to Crawford. More importantly, Cognizant had not planned for and did not have a plan for how it would proceed to try to meet the deadline in this employee's absence. This is just one example of Cognizant's failure to properly allocate appropriate resources to Crawford in breach of its obligations.

81.

Crawford repeatedly and timely notified Cognizant of the problems both in person and in writing. Indeed, complaints were made not only by Crawford's project manager for Project Atlas, but the issues were so serious that Crawford's Chief Global Information Office and Crawford's Chief Operating Officer escalated with increasing urgency the serious problems with Cognizant's performance.

**Crawford's Dispute with Cognizant**

82.

Crawford had worked with Cognizant for years in good faith to implement PeopleSoft Financials. In 2018, as the second phase of implementation experienced greater and greater problems, with no remedy from Cognizant, Crawford tried to resolve the problems with Cognizant's work.

83.

Pursuant to the MSA, which permitted Crawford to withhold payment of any amount disputed in good faith, pending resolution of that dispute, Crawford disputed certain invoices to Cognizant.

84.

During the fall of 2018, Crawford and Cognizant exchanged various communications in an effort to resolve the problems that Crawford was having with Cognizant's work.

85.

After suffering through years of underperformance, in October 2018, Crawford finally notified Cognizant that it planned to transition the work previously done by Cognizant to another provider.

86.

On or about December 14, 2018, Crawford provided to Cognizant a summary of a few of the problems that Crawford has been experiencing with PeopleSoft. Crawford and Cognizant agreed that Cognizant would continue to work to address these problems while transitioning Crawford to the next provider.

87.

Instead of working to resolve the problems, on January 11, 2019, Cognizant responded by concluding that all of the problems were "excusable" under the MSA and result from actions that were "beyond 'Cognizant's reasonable control.'" And even though Crawford disputed the invoiced amounts pursuant to the MSA,

Cognizant demanded payment of all but a small reduction within 30 days or it would suspend services beginning February 12, 2019.

88.

On February 11, 2019, the day before Cognizant had warned it would suspend services, Cognizant ceased its work at Crawford and walked off the job. Although the transition plan required Cognizant to continue its work with Crawford, Cognizant abruptly departed on February 11, 2019. Cognizant's abrupt departure constitutes a separate and independent breach and anticipatory repudiation of Cognizant's contracts with Crawford.

**COUNT I – BREACH OF CONTRACT**

89.

Crawford repeats and realleges paragraphs 1 through 88 above as if fully stated herein.

90.

The MSA and Work Schedules are valid, binding contracts between Crawford and Cognizant.

91.

Cognizant's failures to properly implement PeopleSoft Financials, and to provide the Services and Deliverables under the MSA and applicable Work Schedules, as described above, constitute a breach of its contracts with Crawford.

92.

Cognizant's breaches include but are not limited to failures in: technical design, coding, code review, performance, testing, technical impact analysis, batch processing, meeting requirements of service level agreements, providing sufficient staffing to meet Deliverables and time requirements, and poor communication and status updates.

93.

Under the terms of the contract, Crawford timely notified Cognizant of the numerous problems with Cognizant's work on the implementation of the PeopleSoft Financials. Cognizant did not remedy the problems.

94.

Cognizant's actions breached, at least, MSA § 1.1 (requiring Cognizant to provide Crawford "t[redacted]"); *id.* § 1.2 (Cognizant is obligated to furnish client "[redacted]" as

described in the Work Schedules); *id.* § 8.1 (the express limited warranty) and others.

95.

Cognizant's actions breached the SOWs and Work Schedules for the implementation of PeopleSoft Financials as identified above and as contained the above contracts.

96.

Every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement. Cognizant's actions and failures breached the duty of good faith and fair dealing.

97.

Cognizant's actions were not excusable under MSA § 2.2 or any other term of the MSA.

98.

Crawford has satisfied all conditions precedent to bringing this breach of contract action. Alternatively, Cognizant waived the conditions precedent to filing suit.

99.

Cognizant's breach of contract has caused Crawford substantial damages.

100.

Crawford's injuries have resulted from causes within Cognizant's reasonable control.

101.

Crawford seeks all relief available to it including, but not limited to a refund of all fees paid to Cognizant and any relief necessary to provide Crawford with the benefit of the bargain it made with Cognizant.

**<u>COUNT II – FEES AND EXPENSES OF LITIGATION</u>**

102.

Crawford repeats and realleges paragraphs 1 through 101 above as if fully stated herein.

103.

Pursuant to the Section 7.4 of the MSA, Cognizant owes Crawford for its "[redacted]" incurred in prosecuting this action which brings "[redacted]" and seek to remedy "[redacted]" that were, at least in part, "[redacted]." MSA § 7.4.

104.

In addition, Cognizant has acted in bad faith, been stubbornly litigious, and has multiplied these proceedings unreasonably and vexatiously, causing Crawford unnecessary trouble and expense, under O.C.G.A. § 13-6-11.

105.

Accordingly, Crawford is entitled to recover its attorney's fees and other reasonable expenses incurred in connection with this litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1. That the Court enter judgment in favor of Crawford and against Cognizant on all claims for relief;

2. That the Court award Crawford all damages incurred, in an amount to be proven at trial;

3. That the Court award Crawford its attorneys' fees and expenses of litigation pursuant to the MSA § 7.4, to O.C.G.A. § 13-6-11, and as otherwise provided by law;

4. That all costs be assessed against Cognizant;

5. That Crawford be granted trial by jury on all issues so triable; and

6. That the Court award such other and further relief as shall appear just and proper.

This 9th day of May, 2019.

Respectfully submitted,

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
email: mykkeltvedt@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
email: baumrind@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

*Attorneys for Plaintiff Crawford & Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May, 2019, I filed the within and foregoing **AMENDED COMPLAINT** using the Court's CM/ECF system which will automatically send notification to counsel of record as follows:

Robert D. Ingram, Esq.
David P. Conley, Esq.
Moore Ingram Johnson & Steele, LLP
326 Roswell Street, Suite 100
Marietta, Georgia 30060
ringram@mijs.com
dpconley@mijs.com

Andrew C. Shen, Esq.
Joshua D. Branson, Esq.
Andrew M. Hetherington, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
ashen@kellogghansen.com
jbranson@kellogghansen.com
ahetherington@kellogghansen.com

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt

1766563.1