## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CRAWFORD & COMPANY,

     Plaintiff,

               v.

COGNIZANT TECHNOLOGY SOLUTIONS
U.S. CORPORATION,

     Defendant.

Civil Action No.
1:19-cv-00674-SDG

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's

Amended Complaint [ECF 32].[1] For the reasons stated below, the Court **DENIES**

Defendant's motion.

## I.  BACKGROUND

The following facts are accepted as true for purposes of this motion.[2]

Plaintiff is a Georgia corporation that provides services for insurance companies.[3]

---

[1] Also pending are two other motions to dismiss filed by Defendant [ECF 14; ECF 15]. As those motions were filed before Plaintiff filed its Amended Complaint, they are **DENIED AS MOOT**.

[2] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[3] ECF 21, ¶¶ 2, 6.

Defendant is a Delaware company that provides information technology consulting services to companies around the world.[4] Plaintiff asserts causes of action for breach of contract and fees and expenses of litigation.[5]

The Amended Complaint alleges that Defendant failed to properly implement a new software on Plaintiff's system, in violation of a series of interrelated agreements between the parties.[6] The interrelated agreements include a Master Services Agreement ("MSA") and numerous "Work Schedules."[7] The

---

[4]  *Id*. ¶ 3; ECF 33, at 7.

[5]  ECF 21.

[6]  *Id*. ¶ 13.

[7]  *Id*. ¶ 15; ECF 21-1 (MSA), § 1.1. MSA § 1.1 provides as follows:

> [Defendant] and [Plaintiff] will develop and enter into one or more statements of work incorporating a description of the specific services requested by [Plaintiff] (each, and as modified by the parties from time to time, a "Work Schedule"). Each Work Schedule will set forth, among other things, project scope, various project activities and tasks to be performed by the parties, Deliverables . . . and roles and responsibilities of the parties. [Defendant] will provide to [Plaintiff] those services described as its obligation in each Work Schedule (collectively, the "Services"). Each Work Schedule shall specifically identify this Agreement and indicate that it is subject to the terms hereof. To the extent there are any conflicts or inconsistencies between this Agreement and any Work Schedule, the provisions of the Work Schedule shall govern and control.

parties entered into the MSA when they first started working together in 2008.[8] The MSA contemplated that the parties would enter into future agreements that would be governed by specific Work Schedules and the MSA.[9] In 2014, Plaintiff hired Defendant to implement a software program called "PeopleSoft Financials."[10] The implementation of the software was governed by the MSA and at least ten Work Schedules.[11]

Plaintiff attached to its Amended Complaint the MSA as Exhibit A [ECF 21-1] and the relevant Work Schedules as Exhibits B through K [ECF 21-2 to 21-11].[12] The Work Schedules address different parts of the PeopleSoft Financials software implementation project, but all of them build toward the ultimate goal of the proper implementation of the software.[13] Given this shared goal, many of the obligations under the specific Work Schedules overlap with one another.

---

[8]   ECF 21, ¶ 14; ECF 21-1 (MSA).

[9]   ECF 21, ¶ 15; ECF 21-1 (MSA), § 1.1.

[10]   ECF 21, ¶ 9, 11.

[11]   *Id.* ¶ 11; ECF 21, ¶ 27 (describing Work Schedules attached to Amended Complaint as Exhibits A through K).

[12]   In ruling on this motion to dismiss, the Court may consider any documents attached to or incorporated by reference in the Complaint. Fed. R. Civ. P. 10(c).

[13]   ECF 21, ¶¶ 23, 47.

For example, the PeopleSoft Financials Implementation (SOW# PSF01-Nov2014) agreement and addenda[14] was the first agreement regarding the software implementation entered into by the parties.[15] Thus, its main focus was for Defendant to "design[ ] and build[ ]" the PeopleSoft Financials software for Plaintiff.[16] However, Defendant's obligations also included testing the software and providing support to resolve any defects or conversion errors with the software.[17] The subsequent Work Schedule, PeopleSoft Common Testing SOW 2016—2017 agreement and addenda,[18] focused mainly on testing activities related to the actual implementation of the software designed under the PeopleSoft Financials Implementation (SOW# PSF01-Nov2014).[19] Thus, not only does the subsequent Work Schedule depend on the prior, the testing obligations at least appear to overlap.

---

[14]   ECF 21–2.

[15]   ECF 21, ¶ 28.

[16]   *Id.*

[17]   ECF 21-2, at 5; ECF 21, ¶ 32.

[18]   ECF 21-3.

[19]   ECF 21, ¶ 37–38.

This litigation stems from Defendant's alleged breach of the parties' agreements.[20] Plaintiff claims that Defendant failed to properly implement the PeopleSoft software.[21] The Amended Complaint describes numerous alleged deficiencies in Defendant's performance, and summarizes these as failures in "technical design, coding, code review, performance, testing, technical impact analysis, batch processing, meeting requirements of service level agreements, providing sufficient staffing to meet Deliverables and time requirements, and poor communication and status updates."[22]

Due to alleged deficiencies in the implementation of the software, Plaintiff began to withhold payments in accordance with the MSA.[23] In October 2018, Plaintiff notified Defendant that it planned to transition the work to another provider.[24] In December 2018, Plaintiff provided Defendant a summary of the problems it was experiencing with the software.[25] The parties agreed that

---

[20] *Id*. ¶ 12.

[21] *Id*. ¶ 91.

[22] *Id*. ¶ 92. Capitalized terms not defined herein have the same meaning as that used in the MSA.

[23] *Id*. ¶ 83.

[24] *Id*. ¶ 85.

[25] *Id*. ¶ 86.

Defendant would continue to address those problems while transitioning Plaintiff to the next provider.[26] However, on January 11, 2019, Defendant told Plaintiff that "all of the problems were 'excusable' under the MSA and result from actions that were 'beyond [Defendant's] reasonable control.'"[27] Defendant also informed Plaintiff that it would suspend services on February 12, 2019 if Plaintiff did not provide payment for all but a small reduction of the withheld amounts.[28] On February 11, 2019, Defendant ceased working for Plaintiff.[29]

## II.    PROCEDURAL HISTORY

Plaintiff filed its Amended Complaint on May 9, 2019.[30] Count I of Plaintiff's Amended Complaint asserts a breach of contract due to Defendant's failure to properly implement the PeopleSoft software.[31] Count II requests fees and expenses of litigation under MSA § 7.4 and O.C.G.A. § 13-6-11.[32] This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

---

[26]   *Id.* ¶ 86.

[27]   *Id.* ¶ 87.

[28]   *Id.* ¶ 87.

[29]   *Id.* ¶ 88.

[30]   ECF 21.

[31]   *Id.* ¶ 89.

[32]   *Id.* ¶ 102.

On May 29, 2019, Defendant moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(6). It argues that, as to Count I, the Amended Complaint fails to (1) identify the specific contractual provision breached in seven of the ten Work Schedules; (2) allege that Plaintiff provided notice of a breach under the express terms of the MSA; and, (3) allege that Defendant lacked a valid excuse.[33] Defendant also asserts that any claim for consequential damages must be dismissed.[34] Regarding Count II, Defendant argues that MSA § 7.4 precludes recovery of fees and expenses and Plaintiff cannot maintain this cause of action under O.C.G.A. § 13-6-11 because the breach of contract claim fails or, alternatively, because it is not supported by the factual allegations in the Amended Complaint.[35]

## III.   LEGAL STANDARD

### a.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the

---

[33]   ECF 33, at 13, 15, 20.

[34]   *Id*. at 21.

[35]   *Id*. at 22–24.

Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009). A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir.

2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## IV.   DISCUSSION

### a.   Count I

#### i.   Material Breaches in the Work Schedules

Defendant contends that Plaintiff fails to allege a violation of a contractual

provision in seven of the ten Work Schedules cited in the Amended Complaint.[36]

Defendant asserts, "to the extent that [Plaintiff's] breach of contract action

purports to arise from these seven Work Schedules, the claim must be

dismissed."[37] In response, Plaintiff argues that it not only adequately pleaded a

breach of contract, it exceeded its burden by pointing to specific provisions

breached in the MSA and three of the Work Schedules.[38] Plaintiff contends that

Defendant's argument as to the seven other Work Schedules "ignores the nature

of the contractual relationship between the parties."[39] Plaintiff claims that the MSA

---

[36]   *Id.* at 14. Defendant claims that Plaintiff failed to allege a violation of the Work
       Schedules attached to the Amended Complaint as Exhibits E–K. *Id.* at 8.

[37]   ECF 33, at 14.

[38]   ECF 37-1, at 13–14.

[39]   *Id.* at 14.

and the Work Schedules are all interrelated and, together, they govern the parties' relationship.[40]

The MSA contains a Georgia choice of law provision and the parties do not dispute that Georgia law applies to the present action.[41] In Georgia, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). To survive a motion to dismiss, a plaintiff must "allege a particular contractual provision that the defendants violated." *Id*. at 1296. A plaintiff is prohibited from "only generally assert[ing] a breach of contract, without identifying any provisions or any specific agreements that were breached, nor excerpting any relevant portions of an agreement." *Estate of Bass v. Regions Bank, Inc.*, Nos. 17-13048, 18-12917, 2020 WL 284094, at *4 (11th Cir. 2020). In addressing whether a plaintiff sufficiently alleged a breach of contract claim, the Court may construe the allegations with the written terms of the contract. *Intellicig USA LLC v. CN Creative Ltd.*, No. 1-15-CV-01832-AT, 2016 WL 5402242, at *3 (N.D. Ga. July 13, 2016).

---

[40]   *Id*. at 14.

[41]   ECF 21-1 (MSA), § 12.1; ECF 33, at 19; ECF 37-1, at 3.

Here, Plaintiff both adequately pleaded that Defendant breached a provision of the parties' contractual agreements and attached the agreements to the Amended Complaint.[42] The Amended Complaint explains the history and terms of the parties' contractual relationship at the various stages of the software implementation.[43] It then provides an overview of Defendant's duties and alleged breaches that purportedly resulted in Defendant's failure to properly implement the PeopleSoft Financials software.[44] The alleged breaches include failures in: coding;[45] staffing the project;[46] adhering to specific deadlines;[47] resolving problems reported during the testing phase;[48] and, producing technical design documents that satisfy the functional designs.[49] Plaintiff then pointed to specific provisions in the MSA and three of the Work Schedules that were breached.[50]

---

[42] ECF 21-1 to 21-11.

[43] ECF 21, ¶¶ 23–47.

[44] *Id.* ¶¶ 48–81.

[45] *Id.* ¶ 75.

[46] *Id.* ¶¶ 65, 70, 80.

[47] *Id.* ¶ 67.

[48] *Id.* ¶ 59.

[49] *Id.* ¶ 69.

[50] *E.g.*, *id.* ¶ 58 ("For example, under these interrelated agreements, [Defendant] was responsible for creating the detailed test strategy for ERP Atlas implementation, testing the customized code, and then fixing bugs that arise

Accordingly, Plaintiff exceeded its pleading obligations by identifying particular provisions that were breached, attaching the agreements to its pleading, and excerpting those provisions in the Amended Complaint.

Defendant seeks to dismiss the other seven Work Schedules from the action because it contends that Plaintiff failed to properly plead breaches of those individual agreements. This argument fails because the Amended Complaint appropriately treats the MSA and the ten Work Schedules as a unified whole. O.C.G.A. § 13-6-14 ("If a contract is entire, only one action may be maintained for a breach thereof; but, if it is severable or if the breaches occur at successive periods in an entire contract, an action will lie for each breach . . . ."). The Amended Complaint refers to the agreements and the duties under those agreements as "interrelated"[51] and alleges that breaches in specific areas violated provisions under multiple agreements.[52] It also alleges that delays or errors in one Work

---

to ensure that when the product goes live, the problems identified during the testing did not occur. As [Defendant] agreed in the 2014 Implementation Work Schedule, during the testing phase, [Defendant] was responsible for resolving '[a]ll issues . . . reports during SIT [the System Integration Testing].' Ex. B at 6 (Schedule A-2).").

[51]   ECF 21, ¶¶ 13, 58

[52]   *Id*. ¶¶ 53, 57. *See also id*. ¶ 61 ("At other times, after [Defendant] reported that an error had been corrected, the same error would recur in the testing phase, or worse, would recur after Go Live.").

Schedule affected the commencement and structure of later Work Schedules.[53] The

MSA itself makes clear that it and the Work Schedules should not be treated

independently:

> This Agreement and each Work Schedule may be
> executed in several counterparts and by facsimile
> signature, each of which will be deemed an original, and
> all of which taken together will constitute one single
> agreement between the parties with the same effect as if
> all the signatures were upon the same instrument.[54]

Defendant fails to explain why the Work Schedules should be read in isolation

rather than as part of an entire, whole contract to implement the software. When

properly regarded as a single contract, Plaintiff has surpassed its pleading

obligations for the reasons identified above.

Additionally, a review of the seven Work Schedules and Defendant's own

summary of its duties under them[55] shows that almost all of the schedules contain

an obligation that the Amended Complaint alleges Defendant breached.[56] For

---

[53] *Id*. ¶¶ 36, 42.

[54] ECF 21-1 (MSA), § 12.7.

[55] ECF 33 (Appendix A: Work Schedules).

[56] The possible exception to this is the PeopleSoft Business Support SOW
agreement attached to the Amended Complaint as Exhibit G, ECF 21-7. Under
that agreement, Defendant was responsible for creating business process
documents for finance; creating process flow charts; and assisting finance
users with PeopleSoft functionality. ECF 21-7, at 5. Plaintiff does not clearly
assert that Defendant breached any of these duties. However, because the

example, the Amended Complaint summarizes Defendant's breaches as failures

in "technical design, coding, code review, performance, testing, technical impact

analysis, batch processing, meeting requirements of service level agreements,

providing sufficient staffing to meet Deliverables and time requirements, and poor

communication and status updates."[57] Defendant's own summary of its

obligations under six of the seven Work Schedules it claims must be dismissed

includes reference to at least one of these allegedly breached areas.

As one of its obligations under the Work Order—Alok Galge 02/20/2017

thru 3/24/2017 agreement,[58] Defendant lists "code review."[59] Under the

PeopleSoft RRR Work Schedule,[60] Defendant lists "technical design document for

three reports."[61] Under the PeopleSoft Consolidated Work Schedule,[62] Defendant

lists "technical design document," and "system and integration testing support for

---

Court finds that the MSA and Work Schedules should be treated as one entire
contract, as discussed *supra*, it will not exclude this agreement from Plaintiff's
breach of contract claim.

[57]   ECF 21, ¶ 92.

[58]   Attached to the Amended Complaint as Exhibit E, ECF 21-5.

[59]   ECF 33 (Appendix A: Work Schedules), at 4.

[60]   Attached to the Amended Complaint as Exhibit F, ECF 21-6.

[61]   ECF 33 (Appendix A: Work Schedules), at 6.

[62]   Attached to the Amended Complaint as Exhibit H, ECF 21-8.

new and existing modules in scope."[63] Under the PeopleSoft Performance Testing

Work Schedule,[64] Defendant lists "performance test plan document."[65] Under the

PeopleSoft Functional Support Work Schedule,[66] Defendant lists "facilitate test

case validation and sign-offs with business."[67] Under PeopleSoft Reports Work

Schedule,[68] Defendant lists "technical design document for new or existing report

requests in scope" and "build and unit testing of the new and existing report

requests in scope."[69] Thus, the Court finds that—at a minimum—the Amended

Complaint adequately pleaded breaches of these six interrelated Work Schedules,

all of which were attached to the pleading.

Given these factors, the Court sees no reason to limit this action to specific

Work Schedules. The MSA together with the ten Work Schedules represent the

entire contract between the parties regarding the implementation of the PeopleSoft

Financials software. Consequently, the Court denies Defendant's motion to

---

63   ECF 33 (Appendix A: Work Schedules), at 9.

64   Attached to the Amended Complaint as Exhibit I, ECF 21-9.

65   ECF 33 (Appendix A: Work Schedules), at 5.

66   Attached to the Amended Complaint as Exhibit J, ECF 21-10.

67   ECF 33 (Appendix A: Work Schedules), at 7.

68   Attached to the Amended Complaint as Exhibit K, ECF 21-11.

69   ECF 33 (Appendix A: Work Schedules), at 8.

dismiss to the extent that it seeks to exclude seven of the ten Work Schedules from this action.

### ii.   Notice

Defendant next argues that Plaintiff failed to plead a material breach of MSA §§ 1.1, 1.2, and 8.1 because the Amended Complaint did not adequately allege that Plaintiff provided Defendant notice of the deficiencies when they first occurred.[70] Defendant claims that the MSA sets forth specific processes for providing notice of a potential claim and the Amended Complaint fails to allege that Plaintiff followed those processes.[71] Accordingly, Defendant argues that Plaintiff's claim under the MSA fails because Plaintiff has not pled that it met the conditions precedent to bringing suit.[72]

In support of this argument, Defendant relies on *Lewis v. Scotbilt Homes, Inc.*, No. CV510-016, 2010 WL 11066490, at *7 (S.D. Ga. Oct. 27, 2010) (applying Georgia law).[73] However, *Lewis* does not support Defendant's assertion that a complaint is subject to dismissal if it fails to specifically plead conditions precedent.[74] In that

---

[70]   ECF 33, at 15.

[71]   *Id.* at 15–16.

[72]   *Id.* at 18–19.

[73]   *Id.* at 18.

[74]   Defendant also cites to *Culberson v. Mercedes-Benz USA Ltd.*, 274 Ga. App. 89

case, the defendant argued that the plaintiff failed to show it had satisfied all

conditions precedent to suit by not alleging proper notice. *Id*. Before granting the

plaintiff's motion for leave to amend her complaint, the court found that providing

notice as prescribed by the parties' agreement "is not a pleading requirement, but

a requirement to successfully prove a claim for breach of express warranty." *Id*.

Further, this Court has held:

> [P]laintiffs in Georgia no longer have to allege the satisfaction of conditions precedent to state a breach of contract claim, even if the right to recover depends on performance of the conditions precedent. This is also consistent [with] Fed. R. Civ. P. 9(c), which states that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

*Camden Reserve, LLC v. Flagstar Bank, FSB*, No. 1:09-CV-3078-TCB, 2011 WL

13176330, at *4 (N.D. Ga. Apr. 26, 2011) (citing *Brogdon v. Nat'l Healthcare Corp.*, 103

F. Supp. 2d 1322, 1335 (N.D. Ga. 2000)).

Plaintiff has sufficiently alleged satisfaction of the conditions precedent. The

Amended Complaint states: "[Plaintiff] has satisfied all conditions precedent to

---

(2005) in support of this argument. *Id*. at 19 n.7. However, in that case, the Georgia Court of Appeals affirmed the trial court's grant of summary judgment when the plaintiff could not show that she satisfied the conditions precedent. *Culberson*, 274 Ga. App. at 91–92. The case is therefore inapposite in considering a motion to dismiss.

bringing this breach of contract action. Alternatively, [Defendant] waived the conditions precedent to filing suit."[75] That pleading also asserts, "Under the terms of the contract, [Plaintiff] timely notified [Defendant] of the numerous problems with [Defendant]'s work on the implementation of the PeopleSoft Financials. [Defendant] did not remedy the problems."[76] Accordingly, Plaintiff adequately pleaded satisfaction of conditions precedent under Georgia law and Fedederal Rule of Civil Procedure 9(c).[77]

Defendant's notice argument attempts to put the burden of proving the condition precedent on Plaintiff. However, failure to perform a condition precedent is an affirmative defense. *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1323 (N.D. Ga. 2014). Thus, it is Defendant's burden to raise this argument as a defense in accordance with the particularity requirements of Federal Rule of Civil Procedure 9(c). *Id.*

---

[75]   ECF 21, ¶ 98.

[76]   *Id.* ¶ 93.

[77]   In its reply brief, Defendant requests the Court to order "immediate targeted discovery of any evidence showing whether and when [Plaintiff] ever provided notice of any purported deficiency" should any aspect of Plaintiff's claims survive dismissal. ECF 42, at 9. The Court finds that limited discovery regarding whether notice was proper is not appropriate as Plaintiff has met the pleading standard. Defendant can inquire about these issues during the normal course of discovery.

### *iii.*   **Lack of Excuse**

Defendant also argues that the breach of contract claim should be dismissed because the Amended Complaint fails to adequately allege that Defendant lacks a valid excuse for its breach.[78] Defendant asserts that, under MSA § 3.1, it was excused from performance as soon as Plaintiff started withholding payments.[79] Plaintiff responds that excuse is an affirmative defense that should be pleaded by Defendant.[80]

To support its assertion that Plaintiff was obligated to adequately plead lack of valid excuse, Defendant relies on *Lezshava v. American Home Mortgage Servicing, Inc.*, No. 1:08-CV-3605-BBM, 2009 WL 10666352, at *4 (N.D. Ga. May 15, 2009).[81] However, *Lezshava* simply states that "an individual **cannot be liable** for a breach of contract unless 'a party to a contract fails to perform his duties, without a valid excuse.'" (emphasis added) (quoting *Clower v. Orthalliance, Inc.*, 337 F. Supp. 2d 1322, 1333 (N.D. Ga. 2004)). This is nothing more than a statement of basic contract

---

[78]   ECF 33, at 20.

[79]   *Id.*

[80]   ECF 37-1, at 19. Plaintiff also argues that it pleaded lack of excuse, even though it was not required to do so. ECF 37-1, at 19–20. As the Court finds that excuse is an affirmative defense that must be raised by Defendant, it will not address whether Plaintiff adequately pleaded lack of excuse.

[81]   ECF 33, at 20.

law. The fact that a defendant cannot be found liable if it has a valid excuse for its nonperformance does not mean that a plaintiff is required to plead lack of excuse.[82] This is further supported by *Clower*, in which the Court addressed an excuse defense at the motion for summary judgment stage. 337 F. Supp. 2d at 1333. Defendant has not provided any authority where a complaint was dismissed for failure of a plaintiff to plead lack of excuse.

Furthermore, Defendant appears to assert that its nonperformance is excused under O.C.G.A. § 13-4-23, which states, "If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." This statute establishes an affirmative defense. *Whitesell Corp. v. Electrolux Home Prod., Inc.*, No. CV 103-050, 2011 WL 2312495, at *2 (S.D. Ga. June 8, 2011) (applying Georgia law); *S. Bus. Machines of Savannah, Inc. v. Norwest Fin. Leasing, Inc.*, 194 Ga. App. 253, 255 (1990).[83] Under the Federal Rules of Civil Procedure, affirmative defenses must be raised by the defendant. Federal Rule of Civil Procedure 8(c)(1); *Keybank Nat'l Ass'n v. Hamrick*,

---

[82] As Plaintiff points out, the excuse defense was not raised in *Lezshava*. ECF 37-1, at 20.

[83] Defendant appears to admit that excuse is an affirmative defense by arguing in its reply brief that a complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) when an affirmative defense is readily apparent from the face of the complaint. ECF 42, at 10.

576 F. App'x 884, 888 (11th Cir. 2014) ("Under Federal Rule of Civil Procedure 8(c),
defendants are required to 'affirmatively state any avoidance or affirmative
defense' in their pleadings."). Accordingly, Defendant's argument fails.

Finally, the Court is not convinced by Defendant's argument, raised for the
first time in its reply brief, that the action should be dismissed because the excuse
defense is apparent from the face of Plaintiff's pleading.[84] Defendant contends this
is obvious from the Amended Complaint read in conjunction with Defendant's
January 11, 2019 letter, which Defendant asserts was incorporated into the
pleading.[85] However, the cases Defendant cites for support state that documents
not attached to the complaint can be considered when they are "central" to a
plaintiff's claims. *See Elliott v. Specialized Loan Servicing, LLC*, No. 1:16-CV-4804-
TWT-JKL, 2017 WL 3327087, at *5 (N.D. Ga. July 10, 2017), *report and
recommendation adopted*, No. 1:16-CV-4804-TWT, 2017 WL 3315243 (N.D. Ga. Aug.
3, 2017); *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009).
Plaintiff only refers to the letter once and it is not central to the claims.[86] Further,

---

[84]   *Id*.

[85]   *Id*.

[86]   Regarding the letter, the Amended Complaint states:

> Instead of working to resolve the problems, on January
> 11, 2019, [Defendant] responded by concluding that all of

Defendant only provides a portion of the letter with its reply brief and that portion does not clearly excuse it from performing under the agreements. It is inappropriate to grant a motion to dismiss based on a portion of Defendant's self-serving pre-suit letter concerning what is obviously a contested issue of fact.

### iv.   Consequential Damages

Defendant asserts that the Court should dismiss any claim for consequential damages since they are expressly prohibited under the MSA.[87] The Court agrees with Defendant that damages expressly and clearly prohibited under a contract are not recoverable in a breach of contract case. *Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 644 (1997) (holding that contractual limitations on damages will be enforced unless prohibited by public policy); *see*

---

the problems were "excusable" under the MSA and result from actions that were "beyond '[Defendant]'s reasonable control.'" And even though [Plaintiff] disputed the invoiced amounts pursuant to the MSA, [Defendant] demanded payment of all but a small reduction within 30 days or it would suspend services beginning February 12, 2019.

ECF 21, ¶ 87.

[87] Defendant requests that the Court dismiss any claim for "consequential or special damages." ECF 33, at 22. However, Plaintiff did not specifically plead special damages as required under Fed. R. Civ. P. 9(g). Therefore, the Court will only address this argument as to consequential damages.

*also Alghadeer Bakery & Mkt., Inc. v. Worldpay US, Inc.*,  No. 1:16-CV-03627, 2018 WL 5016496, at *2 (N.D. Ga. Oct. 16, 2018). However, at this stage, Plaintiff "is only required to generally plead that it has suffered damages as a result of [Defendant]'s alleged breach of contract, and it has done so." *Camden*, 2011 WL 13176330, at *4. Therefore, the Court finds that any ruling as to whether the specific types of damages sought by Plaintiff are consequential is premature.

    **b.**    **COUNT II**

        *i.*    **MSA § 7.4**

Defendant argues that Plaintiff's claim for attorneys' fees and expenses is prohibited by MSA § 7.4,[88] which reads:

> **General Indemnity.** [Defendant] agrees to indemnify, defend and hold harmless the [Plaintiff] from and against any and all claims, actions, damages, liabilities, costs and expenses, including reasonable attorneys' fees and expenses, arising out of damages, costs, claims, and/or third party claims to the extent caused directly and proximately by the negligence or willful misconduct of [Defendant], its employees or agents and any third party claims for bodily injury or damage to real or tangible personal property, not including software, data, and documentation, to the extent caused directly and proximately by the negligence or willful misconduct of [Defendant], its employees or agents.[89]

---

[88]   ECF 33, at 22–23.

[89]   ECF 21-1 (MSA), § 7.4

Defendant argues that this indemnification provision only applies to claims brought by third parties.[90] However, § 7.4 is not so limited. As Plaintiff asserts, such a limitation would make the language from that section "and/or third party claims" meaningless.[91] This would be contrary to Georgia law, which "requires us to give meaning to every term [of a contract] rather than construe any term as meaningless." *City of Albany v. Dougherty Cty.*, 835 S.E.2d 681, 685 (Ga. Ct. App. 2019) (quoting *Myers v. Texaco Refining & Mktg., Inc.*, 205 Ga. App. 292, 296 (1992)). Accordingly, the Court finds that the express language of § 7.4 allows for recovery of attorneys' fees and expenses "caused directly and proximately by the negligence or willful misconduct of [Defendant], its employees or agents. . . ."[92]

Defendant relies on § 7.5 in support of its argument that § 7.4 is limited to third-party claims. Section 7.5 sets forth specific exceptions to the entire indemnification section of the MSA, including § 7.4.[93] Defendant asserts that some

---

[90]   ECF 33, at 23.

[91]   ECF 37-1, at 23–24.

[92]   ECF 21-1 (MSA), § 7.4.

[93]   MSA § 7.5 states, "The obligations to indemnify, defend and hold harmless set forth above in this Section 7 will not apply to the extent the [Plaintiff] was responsible for giving rise to the matter upon which the claim for indemnification is based," nor will they apply if Plaintiff: (1) fails to promptly notify Defendant of the issue and that failure causes prejudice to Defendant; (2) fails to allow Defendant to control the response thereto; and (3) cooperates

of the exceptions would lead to an ineffective or absurd result when dealing with a lawsuit between the parties.[94] It appears to the Court that all of the exceptions listed in § 7.5 would lead to an absurd result in a dispute between the parties. Thus, the exceptions should be read to only apply to third party claims. This comports with Georgia law by giving meaning to every provision of the parties' contracts. *Dougherty Cty.*, 835 S.E.2d at 685. The fact that § 7.5 may only apply to third party claims does not necessitate the same limitation on the coverage provision in § 7.4, especially when § 7.4 expressly states that it is not so limited.

The Court also rejects Defendant's argument that § 7.5's language stating the indemnification provisions "will not apply to the extent the [Plaintiff] was responsible for giving rise to the matter upon which the claim for indemnification is based" relieves Defendant of its indemnification obligations when Plaintiff

---

with Defendant at the Defendant's cost and expenses in the defense or settlement. ECF 21-1 (MSA), § 7.5. Additionally, it states that Plaintiff "may participate, at its own expense, in such defense and in any settlement discussions directly or through counsel of its choice on a monitoring, non-controlling basis." *Id.*

[94] ECF 33, at 23–24. For example, Defendant points to the indemnification exception for claims where Plaintiff "fails to give [Defendant] full opportunity to control the response thereto and defense thereof." *Id.* at 23. Obviously, allowing Defendant to control Plaintiff's response in this case would be nonsensical.

initiates the lawsuit.[95] First, a plain reading of this exception shows that it is referring to when Plaintiff is responsible for the underlying actions that lead to a claim, not to when Plaintiff files a lawsuit. *Schwartz v. Harris Waste Mgmt. Grp., Inc.*, 237 Ga. App. 656, 660, 516 S.E.2d 371, 375 (1999) (explaining that when language of contract is clear and unambiguous, court must enforce contract according to its terms). Second, as the Court notes above, § 7.5's exceptions only apply to third party claims.

The Court finds that Defendant has not shown that § 7.4's coverage provisions cannot apply to claims between the parties. Accordingly, it denies Defendant's motion to dismiss Plaintiff's claim for attorneys' fees under MSA § 7.4.

### ii.   O.C.G.A. § 13-6-11

Defendant argues that Plaintiff's claims under O.C.G.A. § 13-6-11 should be dismissed because Count I of the Amended Complaint should be dismissed and Count II is entirely derivative of Count I's substantive claim.[96] Alternatively, Defendant argues that Count II should be dismissed because it is not supported

---

[95]   *Id*. at 23 (citing ECF 21-1 (MSA), § 7.5).

[96]   ECF 33, at 24.

by any factual allegations in the Amended Complaint.[97] Since the Court concludes

that the Amended Complaint successfully pleaded a breach of contract cause of

action under Count I, it will only address Defendant's second argument.

Under Georgia law, "[q]uestions concerning bad faith under [O.C.G.A. § 13-

6-11] are generally for the jury to decide, and the trial court may grant judgment

as a matter of law on such issues only in the rare case where there is absolutely no

evidence to support the award of expenses of litigation." *Georgia Dermatologic*

*Surgery Centers, P.C. v. Pharis*, 323 Ga. App. 181, 184, (2013) (quoting *Hewitt Assocs.,*

*LLC v. Rollins, Inc.,* 308 Ga. App. 848, 853(3), 708 S.E.2d 697 (2011)). The Amended

Complaint alleges that Defendant originally agreed to work with Plaintiff to

transition Plaintiff to a new provider, but Defendant then changed its mind,

claimed that all the alleged deficiencies were excusable, and threatened to suspend

services if Plaintiff did not provide payment.[98] It also alleges that Defendant

"ceased its work . . . and walked off the job."[99] At this stage of the litigation, these

allegations are sufficient to survive the minimal requirements of O.C.G.A. § 13-6-

---

[97]  *Id*. at 24–25.

[98]  ECF 21, ¶¶ 86–87.

[99]  *Id*. ¶ 88.

11. Consequently, the Court denies Defendant's motion to dismiss Plaintiff's claim for attorneys' fees under O.C.G.A. § 13-6-11.

## V.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss [ECF 32]. Defendant's motions to dismiss the original Complaint [ECF 14; ECF 15] are **DENIED AS MOOT**. Defendant shall file its answer to the Amended Complaint within 21 days from entry of this Order. The parties shall conduct their Rule 26(f) conference within 14 days from the date Defendant files its answer. The parties shall serve their initial disclosures and submit a Joint Preliminary Report and Discovery Plan within 30 days from the date Defendant files its answer. Discovery will commence 30 days after Defendant files its answer.

**SO ORDERED** this the 27th day of March 2020.

Steven D. Grimberg
United States District Court Judge