**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CRAWFORD & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 1:19-cv-00674-SDG |
| COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIMS**

Plaintiff Crawford & Company ("Crawford") hereby submits this Answer and Affirmative Defenses to the allegations in Defendant Cognizant Technology Solutions U.S. Corporation's ("Defendant" or "Cognizant") Counterclaims in the above-captioned action, dated April 10, 2020. To the extent any particular allegation contained in Defendant's Counterclaims is not expressly admitted below, it is hereby denied.

## ANSWER TO SPECIFIC ALLEGATIONS AND NUMBERED PARAGRAPHS OF DEFENDANT'S COUNTERCLAIMS

### PARTIES, JURISDICTION, AND VENUE

**1. Cognizant Technology Solutions U.S. Corporation is a company incorporated in Delaware, with a principal place of business in College Station, Texas.**

**RESPONSE:** Admitted.

**2. Crawford & Company is a Georgia corporation with a principal place of business in Peachtree Corners, Georgia.**

**RESPONSE:** Admitted.

**3. The Court has jurisdiction over these Counterclaims under 28 U.S.C. §§ 1332 and 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391.**

**RESPONSE:** Admitted.

### FACTS

**4. These Counterclaims seek to recover amounts that Crawford has refused to pay Cognizant for Services and Deliverables rendered and accepted under the parties' contracts, under which Crawford retained Cognizant to help build and implement a financial-accounting software package called "PeopleSoft Financials."**

**RESPONSE:** Crawford admits that Cognizant seeks to recover amounts that Cognizant allegedly charged to Crawford but that Crawford did not pay. Crawford denies that Cognizant rendered the Services and Deliverables as provided for under the parties' contract and that Crawford accepted Cognizant's deficient

performance. Crawford admits that it retained Cognizant to build and implement a financial-accounting software package called "PeopleSoft Financials." All other allegations in this paragraph are denied.

**5. Cognizant is a multi-national company that provides information technology services, including digital, technology, consulting, and operations services.**

**RESPONSE:** Admitted.

**6. Crawford is a publicly traded company that provides insurance claims-handling services.**

**RESPONSE:** Admitted.

**The 2008 Master Services Agreement**

**7. On January 31, 2008, Cognizant and Crawford entered into a Master Services Agreement ("MSA") to govern the parties' relationship. The MSA set forth a framework under which Cognizant would provide – and Crawford would pay for – certain Services and Deliverables, to be specified in subsequent Work Schedules ("SOWs") negotiated between the parties. A copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint in this action.**

**RESPONSE:** Admitted.

**8. Section 1.2 of the MSA required that future SOWs describe any deliverables (called "Deliverables" by the MSA) that Cognizant was obligated to furnish to Crawford. Under that same section, Crawford was required to "review, evaluate and/or test" every Deliverable "within the applicable time period set forth in [the applicable SOW]," or within 30 days if the SOW did not specify a time period. The MSA defined this period as the "Acceptance Period." If Crawford was dissatisfied with any Deliverable, it was required to provide written notice within the Acceptance Period "specifying the respects**

**in which such Deliverable does not conform to the applicable Acceptance Criteria." MSA § 1.2. Unless Crawford furnished such written notice for a Deliverable within the applicable Acceptance Period, Cognizant was "deemed to have accepted such Deliverable."** ***Id.***

**<u>RESPONSE</u>:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**9. Section 8.1 of the MSA created a limited warranty under which Cognizant warranted "for a period of sixty (60) days following delivery of [a] particular Deliverable" or the performance of "other Services" required by an SOW: that (1) the "applicable Services rendered hereunder will be performed by qualified personnel"; (2) the "Services performed will substantially conform to any applicable requirements set forth in the [SOW]; and (3) "the Deliverable will materially conform to the corresponding product specifications set forth in the applicable [SOW]."**

**<u>RESPONSE</u>:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**10. Beyond these limited warranties, the MSA expressly disclaimed any additional warranty or condition for any Deliverable or Service that Cognizant would provide to Crawford. Section 8.2 of the MSA provided that Cognizant "does not warrant that any Deliverable will operate uninterrupted or error-free." Section 2.1 likewise provided that "[a]ll statements and agreements concerning time are, unless otherwise stated in [an SOW], good faith estimates based upon information available and circumstances existing**

**at the time made." And in all cases, § 2.2 of the MSA "excused" Cognizant "from delays in performing, or from a failure to perform, hereunder to the extent that such delays or failures result from causes beyond Cognizant's . . . reasonable control."**

**RESPONSE:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**11. The MSA mandated a specific process through which Crawford was required raise any claims for an alleged breach of warranty. Sections 8.1 and 8.2 together established that Cognizant's limited warranty lasted only "for a period of sixty (60) days" – or as otherwise specified in the applicable SOW – which the MSA called the "Warranty Period." The warranty was then "expressly conditioned upon" (among other things) Crawford "providing Cognizant with prompt written notice of any claim [for breach of warranty] prior to the expiration of the applicable Warranty Period, which notice must identify with particularity the nonconformity." MSA § 8.2. Accordingly, unless Crawford notified Cognizant of particular non-conformities in a Deliverable within the Warranty Period, the limited warranties set forth above did not attach.**

**RESPONSE:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**12. Section 12.4 of the MSA further described the means by which Crawford was to provide the "notices required by this Agreement." Under that provision, all such notices had to be "given in writing" to Cognizant and**

**"delivered by registered mail, international air courier, facsimile, or the equivalent" to Cognizant's office at 500 Frank W. Burr Blvd, Teaneck, New Jersey 07666.**

**RESPONSE:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**13. The MSA's interlocking notice requirements served an important purpose and formed an essential part of the parties' bargain. As both parties were aware at the outset, the PeopleSoft Financials project depended on Crawford setting clear requirements, issuing directions to Cognizant personnel, and providing timely feedback on Cognizant's work. This interactive process – in which Cognizant's main role was to help implement requirements set by Crawford – was essential to any effective implementation of a customized software package like PeopleSoft Financials.**

**RESPONSE:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA. Crawford further denies the allegations in this paragraph to the extent they suggest that Cognizant's failure to perform as promised under the MSA and SOWs is excused for any reason, and in particular, due to Crawford's alleged inadequate or insufficient "feedback." Crawford further denies that Cognizant's main role was

only to "implement requirements set by Crawford." To the extent not admitted, these allegations are denied.

**14. The MSA's notice requirements reflect that reality: Crawford was required to timely review and provide feedback on Cognizant's work, and unless Crawford timely and specifically objected in the manner required by the parties' contracts, it was deemed to have accepted the work.**

**<u>RESPONSE</u>:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**15. Section 3.1 of the MSA also required Crawford to "pay to Cognizant the fees and other compensation set forth in each [SOW]."**

**<u>RESPONSE</u>:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**16. Section 3.2 of the MSA likewise required Crawford to pay each invoice "in full within thirty (30) days of receipt of each invoice," except that it allowed Crawford to "withhold payment of any amount disputed in good faith pending resolution of such dispute."**

**<u>RESPONSE</u>:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the

allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**17. The MSA further stated that Cognizant had "no obligation to perform any Services when any amount required to be paid by [Crawford] remains due and unpaid beyond the date such amount is due." MSA § 3.1.**

**RESPONSE:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**The Work Schedules and Cognizant's Performance**

**18. In 2014, Crawford began implementation of the PeopleSoft Financials software and engaged Cognizant to assist in its implementation. From December 1, 2014 to February 7, 2019, the parties agreed to at least 11 relevant SOWs that described the projects on which Cognizant would work. A summary of the SOWs, with non-exhaustive cites to some of their key provisions, is attached here as Exhibit A. Copies of ten of the relevant SOWs are attached as Exhibits B-K to the Amended Complaint. A copy of the additional April 1, 2018 Cognos Reports Support SOW, as well as the addenda to this SOW, is attached hereto as Exhibit B.**

**RESPONSE:** Crawford admits that, in 2014, Crawford engaged Cognizant to assist in the customization and implementation of the PeopleSoft Financials software. Crawford further admits that the parties agreed to at least 11 relevant SOWs that described the projects on which Cognizant would work. The SOWs speak for themselves. Crawford denies that the summary of the SOWs attached to

these Counterclaims as Exhibit A, is a complete and accurate summary of the parties' rights and obligations under the SOWs or that the cites accurately reflect the SOWs "key provisions." Crawford admits that copies of ten of the relevant SOWs are attached as Exhibits B-K to the Amended Complaint. Crawford further admits that a copy of the April 1, 2018 Cognos Reports Support SOW with addenda appears to be attached to the Counterclaims as Exhibit B.

**19. Under the relevant SOWs and addenda, Cognizant agreed to provide Crawford with personnel on a "Time & Material" basis to "help with design, build, unit test" and other implementation work related to PeopleSoft Financials. Am. Compl. Ex. B, at 4. The SOWs also generally contained a "Schedule of Rates" stating the titles of Cognizant personnel assigned to the project, the hourly rates, and an estimate of the time they would spend on the Services or Deliverables set out in the SOW.**

**RESPONSE:** The relevant SOWs and addenda speak for themselves. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of any SOW or addenda or the parties' rights or obligations under these documents.

**20. Under the SOWs, it was Crawford that directed and allocated work to Cognizant resources, including with respect to planning, execution, ownership, and decision-making. Several of the SOWs expressly state that "Project management activities will be performed by Crawford." Am. Compl. Exs. B, at 13 & D, at 11. Thus, for instance, on or about January 2018, Crawford made the unilateral decision to bring PeopleSoft Financials system live. Cognizant was neither consulted nor a party to that decision.**

**<u>RESPONSE</u>:** The relevant SOWs and addenda speak for themselves. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of any SOW or addenda or the parties' rights or obligations under these documents. Crawford further denies the allegations in this paragraph to the extent they suggest that Crawford "directed and allocated work to Cognizant resources" or otherwise made decisions regarding the PeopleSoft implementation without consultation, advice, or direction from Cognizant, the consulting experts engaged specifically to design, develop, and implement the desired processes. Crawford further denies that its decision to bring the PeopleSoft Financials system live was "unilateral" and that Cognizant was not consulted or a party to that decision.

**21. The SOWs identified the specific Deliverables that Cognizant would provide to Crawford and defined the Acceptance Criteria that Crawford was to use in determining whether to accept those Deliverables. In nearly every instance, the SOWs also established a specific Acceptance Period for each Deliverable – typically three business days from delivery. *See* Ex. A.**

**<u>RESPONSE</u>:** The relevant SOWs and addenda speak for themselves. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of any SOW or addenda or the parties' rights or obligations under these documents.

**22. In the four-year span of PeopleSoft Financials implementation, Cognizant agreed to deliver to Crawford dozens of specific Deliverables and Services across the SOWs. *See* Ex. A.**

**<u>RESPONSE</u>:** Admitted.

**23. Cognizant fully performed under the SOWs by timely delivering to Crawford each of the Deliverables and Services required by the SOWs. Each Service was performed by qualified Cognizant personnel and conformed to all applicable requirements set forth in the Work Schedules. Furthermore, each Deliverable conformed to the corresponding product specifications set forth in the applicable Work Schedule for such Deliverable.**

**<u>RESPONSE</u>:** Denied.

**24. Crawford explicitly accepted in writing dozens of the Deliverables and Services provided by Cognizant pursuant to the SOWs. These written acceptances reside on Crawford's electronic systems.**

**<u>RESPONSE</u>:** Crawford admits that it expressly accepted some Deliverables or Services in writing, but it is not clear what writings Cognizant is referencing in this paragraph. Accordingly, Crawford is without sufficient information to admit or deny whether the specific "written acceptances" to which Cognizant refers in this paragraph are or were maintained on Crawford's electronic systems.

**25. When the parties encountered issues with any Deliverable or Service, as would be expected with any complicated implementation project such as the one at issue here, Cognizant worked cooperatively with Crawford to resolve these issues by providing additional expertise – often at no cost to Crawford. For instance, in the initial period after Crawford had made the unilateral decision to go live with the PeopleSoft Financials system, Cognizant invested in and provided to Crawford additional tuning experts to help resolve unforeseen issues at no cost to Crawford.**

**RESPONSE:** Denied.

**26. Notably, even when issues arose, Crawford never objected to any Deliverable within the Acceptance Period detailed in the applicable SOW or the MSA. Nor did Crawford ever provide Cognizant with written notice of any warranty claim within the 60-day Warranty Period set forth in §§ 8.1 and 8.2 of the MSA, which is a pre-condition to any warranty claim and to any contractual obligation to cure or correct any purported deficiency.**

**RESPONSE:** Denied.

**27. Furthermore, Crawford never submitted timely written notice that any Deliverable failed to satisfy the applicable Acceptance Criteria or notice of any warranty claim "by registered mail, international air courier, facsimile, or the equivalent" to Cognizant's office in located at 500 Frank W. Burr Blvd, Teaneck, New Jersey 07666.**

**RESPONSE:** Denied.

**28. Crawford's failure to object contemporaneously to Cognizant's work was no mere technicality. Cognizant depended on Crawford's timely feedback and guidance to do its work. The work that Cognizant conducted for Crawford was in large part iterative – with later work building on prior work that the parties had completed pursuant to SOWs. Cognizant could not effectively engage in much of its work until Crawford had approved the work that had already been provided.**

**RESPONSE:** Denied.

**29. The MSA does not allow Crawford to now claim after-the-fact – in many instances years later –that it was dissatisfied with the Deliverables and Services that Crawford had previously approved or that were otherwise deemed accepted.**

**RESPONSE:** Crawford admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**The Parties' Dispute and Crawford's Non-Payment**

**30. In 2017 and 2018, Crawford began withholding payment of some of Cognizant's invoices. At the time, Crawford did not object to any of Cognizant's work as contemplated by the parties' contracts, nor did it submit any good-faith dispute with any of Cognizant's invoices. Despite repeated inquiries by Cognizant, and efforts by Cognizant to escalate the matter within Crawford, Crawford did not provide any meaningful explanation of its reason for withholding payment.**

**RESPONSE:** Denied.

**31. In April 2018, Crawford stopped paying Cognizant's invoices altogether. Once again, Crawford did not object to any of Cognizant's work as contemplated by the parties' contracts, nor did it submit any good-faith dispute with any of Cognizant's invoices.**

**RESPONSE:** Denied.

**32. In the third and fourth quarters of 2018, Crawford for the first time began raising purported concerns about the PeopleSoft Financials project. Those concerns were typically raised orally; none was provided pursuant to the formal notice written requirements under the MSA.**

**RESPONSE:** Denied.

**33. In October 2018, Crawford also notified Cognizant that it would be transitioning to a new provider to handle the remainder of the PeopleSoft**

**Financials project. After receiving that notice, Cognizant continued to work cooperatively with Crawford in an effort to ensure a smooth transition.**

**RESPONSE:** Crawford admits that it notified Cognizant in or about October 2018 that it would be transitioning to a new provider to handle the remainder of the PeopleSoft Financials project. Crawford denies the remaining allegations in this paragraph.

**34. On December 14, 2018, Crawford's Chief Information Officer sent an email to certain Cognizant employees purporting to "outline [] some of the issues Crawford incurred as a result of Cognizant's services and deliverables." This email did not tie any these purported "issues" to specific SOWs, did not allege that Cognizant failed to actually provide any specific Service or Deliverable, did not allege that Crawford had ever objected to any Service or Deliverable within the Acceptance Period under § 1.2 of the MSA or the Warranty Period under § 8.2 of the MSA, did not challenge the accuracy of any of Cognizant's invoices, and was not provided pursuant to the written-notice requirements of § 12.4 of the MSA.**

**RESPONSE:** The December 14, 2018 email from Crawford's Chief Information Officer to certain Cognizant employees speaks for itself. Crawford denies the allegations in this paragraph to the extent they misrepresent or mischaracterize the contents of that email. Crawford further admits that a copy of the MSA is attached as Exhibit A to Crawford's Amended Complaint. The MSA also speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the terms of the MSA or the parties' rights or obligations under the MSA.

**35. Furthermore, the "issues" that Crawford raised in this email pertained to work that Crawford had previously expressly signed off on and/or that was the result of Crawford's own incomplete or inadequate requirements. For instance, Crawford complained of revenue recognition and billing issues with "[f]lat rate escrow revenue billing enhancement" that was purportedly the result of "lack of thorough regression testing and Cognizant's poor coding standards." However, Cognizant's regression testing and coding standards were done in accordance with the requirements documents provided by Crawford to Cognizant. Moreover, Crawford had expressly signed off on the test results relating to the flat rate escrow tool in the fourth quarter of 2017.**

**RESPONSE:** Denied.

**36. On January 11, 2019, Cognizant responded to Crawford's December 14, 2018 e-mail explaining that any purported deficiencies were beyond Cognizant's reasonable control, and were in fact due to Crawford's own management shortcomings, including with respect to providing incomplete functional requirements documents to Cognizant and Crawford's inadequate engagement with Cognizant resources. Cognizant further explained in detail that it had performed as required under the MSA and SOWs, and that Crawford's belated criticisms of Cognizant's work were both procedurally improper and substantively meritless. In that letter, Cognizant formally notified Crawford that it was in breach of its obligation to pay Crawford's outstanding invoices under the MSA – which then totaled $1,712,042.20.**

**RESPONSE:** Crawford admits that Cognizant responded to, among other things, its December 14, 2018 e-mail on or about January 11, 2019. The January 11, 2019 correspondence from Cognizant to Crawford speaks for itself. Crawford denies the allegations in this paragraph to the extent they misrepresent or mischaracterize the contents of that correspondence.

**37. Since that letter, Crawford's outstanding accounts receivable balance has grown to $2,040,270, as a result of work that Cognizant continued to provide to Crawford notwithstanding Crawford's refusal to pay its invoices. A chart detailing the $2,040,270 balance by individual invoice and individual SOW is attached as Exhibit C.**

**RESPONSE:** Crawford admits that Cognizant now reports an outstanding accounts receivable balance of $2,040,270 as shown on Exhibit C to the Counterclaims. Crawford denies that it owes this amount under any SOW or under the MSA. Crawford further denies that the chart detailing the alleged $2,040,270 balance, which is attached as Exhibit C, is an accurate reflection of the unpaid amount Cognizant billed Crawford for services or the amount Cognizant earned or is entitled to under the MSA. To the extent not admitted, these allegations are denied.

**38. Crawford has not articulated any valid basis for refusing to pay its outstanding balance. Those amounts each were properly billed by Cognizant; reflected work that Cognizant performed as directed under the MSA and SOWs; involved Deliverables and Services that Crawford actually or constructively accepted; and were contained on invoices that Crawford failed to timely dispute. Accordingly, the MSA requires Crawford to pay those amounts in full.**

**RESPONSE:** Denied.

**39. On February 7, 2019, Cognizant sent Crawford a letter informing it that Crawford remained in breach of the MSA for nonpayment and that, in light of the parties' discussions, it understood that Crawford did not intend to cure the breach. The letter therefore stated that Cognizant intended to suspend services under § 3.1 of the MSA, due to Crawford's material and**

**uncured breach of its payment obligations. The letter further stated that Cognizant planned for the suspension of services to begin on February 12, 2019.**

**RESPONSE:** Crawford admits that Cognizant sent Crawford a letter on or about February 7, 2019 contending that Crawford was "in material breach of the MSA for its nonpayment." The February 7, 2019 correspondence speaks for itself. Crawford denies the allegations in this paragraph to the extent they mischaracterize or misrepresent the contents of this correspondence. Crawford further denies that it was in breach of the MSA for nonpayment. Crawford admits that Cognizant threatened to suspend services on February 12, 2019.

**40. The next day, on February 8, 2019, Crawford filed suit against Cognizant for supposedly breaching the MSA and SOWs.**

**RESPONSE:** Crawford admits that it filed suit against Cognizant for breaching the MSA and SOWs on February 8, 2019.

**41. Cognizant intended to continue working until February 12, but when Cognizant personnel arrived for work on February 11, Crawford made it impossible for them to continue. Among other steps, Crawford revoked Cognizant employees' security passes and subjected them to harassing questioning about the then-pending Crawford lawsuit. Such conduct forced Cognizant to suspend service a day earlier than planned. For that reason, Cognizant permanently suspended work on the PeopleSoft Financials project on February 11, 2019.**

**RESPONSE:** Crawford is without sufficient information to admit or deny whether Cognizant intended to continue working until February 12, and on that

basis denies that allegation. Crawford further denies the remainder of the allegations in this paragraph.

**42. On February 21, 2019, Cognizant issued a single, consolidated invoice to Crawford for the full $2,040,270 that Crawford owed. That consolidated invoice is attached as Exhibit D. Crawford continues to refuse to pay any of that amount.**

**RESPONSE:** Crawford is without sufficient information to admit or deny whether Cognizant issued the single, consolidated invoice to Crawford identified in this paragraph on February 21, 2019, and on that basis denies this allegation. Crawford further admits that it refuses to pay Cognizant $2,040,270.

**43. In addition to the unpaid amounts that Cognizant is owed but has not received, Cognizant has also been harmed by incurring significant costs evaluating and investigating Crawford's spurious and untimely breach-of-warranty claims and in defending against the claims asserted in the First Amended Complaint.**

**RESPONSE:** Denied.

## CLAIMS FOR RELIEF

### COUNT ONE
### Breach of Contract

**44. Cognizant re-alleges Paragraphs 1 through 43.**

**RESPONSE:** Crawford incorporates by reference its responses to Paragraphs 1 through 43.

**45. Cognizant and Crawford were parties to the valid and binding MSA and SOWs, pursuant to which the parties agreed that Cognizant would provide specified Deliverables and Services to Crawford in exchange for payment.**

**RESPONSE:** Admitted.

**46. Cognizant provided those Deliverables and Services to Crawford as contemplated by the MSA and SOWs.**

**RESPONSE:** Denied.

**47. Crawford actually and/or constructively accepted those Deliverables and Services and failed to timely object to any of them under the applicable terms of the MSA and SOWs.**

**RESPONSE:** Denied.

**48. Notwithstanding Cognizant's performance under the MSA and SOWs, and Crawford's acceptance of that performance, Crawford has failed to make payments required by the contracts in the amount of at least $2,040,270, plus any applicable interest and costs.**

**RESPONSE:** Denied.

**49. Cognizant has satisfied all conditions precedent to Crawford's obligation to pay the outstanding invoices.**

**RESPONSE:** Denied.

**50. Crawford lacked any valid excuse for its breach of its payment obligations under the MSA and SOWs.**

**RESPONSE:** Denied. Crawford further denies the allegations in this paragraph to the extent they suggest that Crawford breached its payment obligations under the MSAs and SOWs.

**51. As a result of Crawford's unjustified non-payment for services rendered by Cognizant, Cognizant has been harmed in the amount of at least $2,040,270, plus any applicable pre-judgment interest and costs, including but not limited to costs incurred under MSA § 8.4.**

**RESPONSE:** Denied.

**COUNT TWO**
**Unjust Enrichment (In the Alternative)**

**52. Cognizant re-alleges Paragraphs 1 through 51 and brings this count in the alternative to Count One.**

**RESPONSE:** Crawford incorporates by reference its responses to Paragraphs 1 through 51.

**53. Cognizant conferred a valuable benefit on Crawford by providing software coding and implementation services, including the Deliverables and Services described herein, at Crawford's request.**

**RESPONSE:** Crawford denies that Cognizant provided the Deliverables and Services as agreed under the MSA. Crawford admits that, during the course of the PeopleSoft project, Cognizant conferred some valuable benefit on Crawford by providing software coding and implementation services, but Crawford denies that this benefit was sufficient to satisfy Cognizant's obligations under the parties

contracts and denies the allegations in this paragraph to the extent they suggest that Cognizant did not also confer a significant harm on Crawford.

**54. Crawford accepted and benefited from the Deliverables and Services that Cognizant provided to it. Those Deliverables and Services were worth well more than $2,040,270 in total, all of which amounts Cognizant timely billed Crawford.**

**RESPONSE:** Denied.

**55. Despite Crawford's acceptance of Cognizant's Deliverables and Services, and despite the benefits Cognizant thereby conferred on it, Crawford has failed to pay at least $2,040,270 of the amounts billed and owing, plus any applicable pre-judgment interest.**

**RESPONSE:** Crawford denies that it accepted all of the Deliverables and Services Cognizant purports to have provided to Crawford and denies that Cognizant conferred on Crawford a benefit that justifies the claim for $2,040,270. Crawford further denies that it is liable to Crawford for this or any amount including any applicable pre-judgment interest.

**56. Equity and good conscience require that Crawford pay restitution to Cognizant in the amount of at least $2,040,270 plus any applicable pre-judgment interest.**

**RESPONSE:** Denied.

**<u>COUNT THREE</u>**
**Expenses Of Litigation Under O.C.G.A. § 13-6-11**

**57. Cognizant re-alleges Paragraphs 1 through 56.**

**<u>RESPONSE</u>:** Crawford incorporates by reference its responses to Paragraphs 1 through 56.

**58. Crawford has acted in bad faith, been stubbornly litigious, and/or caused Cognizant unnecessary trouble and expense. This allegation is based not only on Crawford's unjustified, vexatious breach of its payment obligations as outlined above, but also on the fact that Crawford filed this action without a good-faith basis for alleging that it complied with the conditions precedent set forth in MSA §§ 1.2, 8.2, and 12.4.**

**<u>RESPONSE</u>:** Denied.

**59. Cognizant's counsel has sent Crawford's counsel numerous correspondence asking Crawford to provide the factual basis for its conclusory assertion that it complied with the notice provisions in §§ 1.2, 8.2, and 12.4 of the MSA. Crawford has refused to answer and has refused Cognizant's requests to limit discovery to this threshold, dispositive issue. All this conduct collectively and individually entitles Cognizant to relief under O.C.G.A. § 13-6-11.**

**<u>RESPONSE</u>:** Denied.

**60. As a result of Crawford's violation of O.C.G.A. § 13-6-11, Cognizant is entitled to recover its attorney's fees and other reasonable expenses incurred in connection with this litigation.**

**<u>RESPONSE</u>:** Denied.

## PRAYER FOR RELIEF

**Cognizant requests the Court to enter judgment in its favor against Counterclaim-Defendant Crawford, awarding full damages or restitution, in an amount to be proven at trial, plus all applicable interest, attorney's fees, costs, and any other such relief as the Court deems just and proper. Cognizant requests a jury trial on all issues so triable.**

**RESPONSE:** Crawford denies that Cognizant is entitled to a judgment in its favor on its Counterclaims against Crawford and denies that Cognizant is entitled to recover any damages or restitution from Crawford, including interest, attorney's fees, or costs.

## GENERAL DENIAL

Each and every allegation not specifically admitted above or otherwise responded to is hereby denied.

## AFFIRMATIVE DEFENSES

Crawford asserts the following affirmative defenses to Defendant's Counterclaims but it does not assume the burden of proof on any such defense except as required by applicable law. Crawford further reserves its right to assert additional defenses and/or to supplement its Answer and Affirmative Defenses as permitted by this Court and the Federal Rules of Civil Procedure.

### First Defense

Cognizant's Counterclaims fail to state a claim for relief.

**Second Defense**

Cognizant's Counterclaims are barred in whole or in part by the doctrines of waiver and estoppel.

**Third Defense**

Cognizant's Counterclaims are barred in whole or in part by its failure to substantially perform.

**Fourth Defense**

Cognizant's Counterclaims are barred in whole or in part by its failure to satisfy a condition precedent.

**Fifth Defense**

Cognizant's Counterclaims are barred in whole or in part by its failure to mitigate.

**Sixth Defense**

Cognizant's Counterclaims are barred in whole or in part by its own breach of contract.

**Seventh Defense**

Any recovery to Cognizant is subject to set off against the amounts previously paid by Crawford to Cognizant and/or due to Crawford's damages

resulting from Cognizant's breach of contract and misconduct as alleged in the Amended Complaint.

WHEREFORE, Crawford prays that Defendant's Counterclaims be dismissed with all costs charged to the Defendant, that the Defendant take nothing in this action, and that Crawford receive such other relief as the Court deems appropriate.

This 15th day of May, 2020.

Respectfully submitted,

*/s/ Michael R. Baumrind*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
email: mykkeltvedt@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
email: baumrind@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

***Attorneys for Plaintiff Crawford & Company***

**CERTIFICATION**

The undersigned counsel for Plaintiff Crawford & Company hereby certifies that the within and foregoing Plaintiff's Answer And Affirmative Defenses To Defendant's Counterclaims was prepared using 14-point Times New Roman font and complies with the margin and type requirements of this Court, per L.R. 5.1 (N.D. Ga.).

This 15th day of May, 2020.

*/s/ Michael R. Baumrind*
Michael R. Baumrind

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIMS** with the Clerk of Court using the CM/ECF system, which will send electronic notification to all participating attorneys of record as follows:

Robert D. Ingram, Esq.
Moore Ingram Johnson & Steele, LLP
326 Roswell Street, Suite 100
Marietta, Georgia 30060

Andrew C. Shen, Esq. (*pro hac vice*)
Joshua D. Branson, Esq. (*pro hac vice*)
Andrew M. Hetherington, Esq. (*pro hac vice*)
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

This 15th day of May, 2020.

*/s/ Michael R. Baumrind*
Michael R. Baumrind